UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW DOWNING, Individually and on Behalf of All Other Persons Similarly Situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:20-cv-11673-IT |
| KEURIG GREEN MOUNTAIN, INC., | * * | |
| Defendant. | * * * | |

MEMORANDUM & ORDER

June 11, 2021

TALWANI, D.J.

Plaintiff Matthew Downing, on behalf of himself and all other persons similarly situated, brings this case against Keurig Green Mountain, Inc. ("Keurig"). His Complaint [#1] alleges that Keurig deceptively advertised its plastic single-serving pods as recyclable when those pods were not recyclable according to federal regulations. Pending before the court is Keurig's Motion to Dismiss [#16] based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Keurig moves in the alternative to strike Downing's nationwide-class allegations or to dismiss his claim to the extent he asserts it on behalf of anyone outside of Massachusetts. For the following reasons, the motion to dismiss is DENIED but to the extent that Downing alleges injury on behalf of a nationwide class, those claims are struck under Federal Rule of Civil Procedure 12(f).

I.      **Factual Background**

As alleged in the Complaint [#1], the facts are as follows. Keurig is a Delaware corporation with a principal place of business in Burlington, Massachusetts. Compl. ¶ 10 [#1].

1

Keurig manufactures coffee machines that brew single servings of coffee and other hot beverages using Keurig's own K-Cup Pods ("Pods"). Pods are plastic containers covered in foil. Compl. ¶¶ 2, 39 [#1]. In June of 2016, Keurig released Pods that were manufactured from #5 plastic (which is recyclable) instead of #7 plastic (which is not). Id. at ¶¶ 17, 29. The decision to switch to Pods made from recyclable plastic came after a backlash to the use of nonrecyclable plastic. Id. at ¶¶ 18-22.

Keurig's product design staff is based in Massachusetts. Id. at ¶ 59. The decision to market and label Pods as recyclable was made at Keurig headquarters in Massachusetts. Id. at ¶¶ 24-26. The logo for these new Pods, designed at the same headquarters, id. at ¶¶ 58-66, featured a three-arrow recycling symbol and the catch phrase "Peel, Empty, Recycle," although the word "Recycle" was followed by an asterisk that advised buyers to "Check Locally." Id. at ¶ 29. The box also informed customers that they could "Have your cup and recycle it, too," although again the advertisement stated that customers should "Check locally to recycle empty cup." Id. at ¶ 31. Those promises were significant and material to consumers, who purchased and received Pods that Keurig promised were recyclable. Id. at ¶ 7. The advertisements have remained substantively and materially similar since June 2016. Id. at ¶ 33.

During the period from June 2016 to the present, however, many recycling centers could not accept the Pods as a recyclable product. Id. at ¶ 42. In an internal investigation completed prior to releasing the product, Keurig discovered that even at recycling centers which will accept the Pods only 30% of the Pods were successfully recycled. Id. at ¶ 53. A majority of the rejected Pods were not selected for recycling based on their size, their tendency to become crushed by the recycling machines, and residue from the foil tops, filters or other contaminants. Id. at ¶¶ 6, 37-40. Thus, Downing complains that he was tricked into buying a product that was less valuable

than the one he bargained for and that Keurig knowingly sold Pods with deceptive advertisements. Id. at ¶¶ 42, 55, 67, 89.

## II.     Procedural Background

On or around June 18, 2020, Downing sent Keurig written demand for relief pursuant to Chapter 93A, Section 9, describing the allegedly deceptive practice and identifying the claimant and his injury. Id. at ¶ 90. On July 30, 2020, Keurig responded but no resolution was reached. After his demand, Downing filed the Complaint [#1] in federal court based on diversity jurisdiction under 28 U.S.C. § 1332(d), asserting that he is in a class of purchasers consisting of more than 100 class members who live across multiple states and that the claims on behalf of the class would exceed five million dollars.  Compl. ¶ 11 [#1]. His complaint also asserts that venue is proper in the District of Massachusetts because Keurig's conduct (including its marketing development and sustainability decisions) occurred at its headquarters and principal place of business in Burlington, Massachusetts. Compl. ¶¶ 10, 12, 57-66 [#1]. Keurig then filed the pending Motion to Dismiss [#16], seeking dismissal of all claims based on lack of standing and failure to state a claim. Keurig also moves to strike the nationwide class as a matter of law.

## III.    Standard of Review

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251

3

(1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id. A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In evaluating a motion to dismiss, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

**IV.    Discussion**

   *A.    Standing*

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, as revised (May 24, 2016) (quoting

Lujan, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing each of the three elements required for standing." Van Wagner Boston, LLC v. Davey, 770 F.3d 33 (1st Cir. 2014) (citing Lujan, 504 U.S. at 561). Where, as here, the question of standing is based on the pleadings, "the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action," Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016), taking all of the facts (and any inferences that follow) in the plaintiff's favor, Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 7 (1st Cir. 2018) (quoting Katz, 672 F.3d at 70-71).

To establish injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner, 823 F.3d at 731–32.

Downing argues that he has a legally protected interest in not being subject to deceptive advertising under Chapter 93A of Massachusetts General Law. See Mass. Gen. Laws ch. 93A, § 2(a) (1978). Keurig argues that Downing did not provide the court with the necessary facts to establish standing because he did not include the specific advertisement he saw that induced him to buy the Pods, and did not state whether he was a prior purchaser of Keurig's Pods, whether the Pods he bought were recyclable in his community and what the difference in value between a recyclable and a non-recyclable Pod would be. Def's Mem. 6-7 [#17]. However, Downing attached photographs of Keurig's advertisements for recyclable pods and stated that Keurig's advertising has been substantially and materially the same since June of 2016. Compl. ¶ 8-9 [#1].

5

Accepting that fact as true, as the court is bound, Downing has sufficiently described the advertisements in effect when he purchased the Pods. See Bezdek v. Vibram USA Inc., 2013 U.S. Dist. LEXIS 22939, at *14 (D. Mass. 2013) ("[T]he complaint is replete with the sort of representations defendants made…throughout the relevant period. Precisely which statement or particular benefit influenced [the plaintiff's] decision is irrelevant, given that [he] is not required to prove actual reliance.").

The remaining "missing facts" do not matter for the purposes of establishing Downing's injury: Downing has adequately pled that (1) he saw an advertisement of the type in circulation since June 2016 that touted the Pods recyclability; (2) enticed by the promise of recyclability, he purchased Pods; (3) the Pods are not recyclable according to the Federal Trade Commission's "Green Guides," 16 C.F.R. § 260.12(b)(1), incorporated by Section 2(b) of Chapter 93A; and (4) Downing was deprived of value that he thought he had paid for on account of Keurig's deceptive advertising, an actual economic loss that is a "prototypical concrete harm." Gustavsen v. Alcon Labs., Inc., 903 F.3d 1, 8 (1st Cir. 2018); see also Lee v. Conagra Brands, Inc., 958 F.3d 70, 80-81 (1st Cir. 2020).[1]

Next, Keurig contends that the Pods are made from recyclable plastic, and that any failure of the Pods to be recycled are the fault of the recycling centers (and thus not traceable to Keurig). Def's Mem. 8-9 [#17]. The "traceability" element "requires the plaintiff to show a sufficiently

---

[1] The Supreme Judicial Court has stated that deceptive advertising is not a *per se* injury. See Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 254-55 (1st Cir. 2010). Rather, for there to be a cognizable injury, "'the person who was the target of the misrepresentation [must have] actually acquired something in a transaction that is of less value than he was led to believe it was worth when he bargained for it.'" Passatempo v. McMenimen, 461 Mass. 279, 299 (2012). Unlike the case where a consumer sees a shirt on sale with a deceptive "comparison price" but can actually examine the shirt and decide whether it is worth the amount it is being sold for, see, e.g., Shaulis v. Nordstrom, Inc., 865 F.3d 1, 9-11 (1st Cir. 2017), Downing could not have known when he purchased the Pods that they were not, in fact, as advertised.

direct causal connection between the challenged action and the identified harm." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020) (quoting Katz, 672 F.3d at 71). Although "causation is absent if the injury stems from the independent action of a third party," Katz, 672 at 71-72, Downing's injury is traceable to Keurig, not to individual recycling centers, where Keurig's advertisement may be understood as making representations regarding the recycling process. "Causation is established where the deceptive act or practice 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" Estrada v. Progressive Dir. Ins. Co., 53 F. Supp. 3d 484, 501 (D. Mass. 2014) (quoting Hershenow, 445 Mass. 790, 801 (2006) (alterations in original). Had Keurig not claimed that its products were recyclable when they were allegedly not entitled to do so, Downing would not have purchased the pods believing that they were recyclable. Compl. ¶ 8-9 [#1]. Keurig's advertising was thus adequately pled as the direct and foreseeable cause of Downing's injury. See also Smith v. Keurig Green Mt., Inc., 393 F. Supp. 3d 837, 844-45 (N.D. Cal. 2019).

Finally, Keurig argues that Downing does not have standing to pursue injunctive relief because he stopped buying Pods after discovering that they were not recyclable. Def's Mem. 10-11. In other words, because Downing now understands that the Pods are only recyclable in certain communities and may not be identified by commercial recycling machines, an injunction ordering Keurig to change its labeling would not redress his injury. O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

"The fact that changes in future . . . marketing will not remedy past harm to consumers does not make such relief meaningless to those consumers." Bezdek v. Vibram USA, Inc., 809 F.3d 78, 84 (1st Cir. 2015). A "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 969 (9th Cir. 2018) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)); see also Smith, 393 F. Supp. 3d at 845. In Davidson, this threat of future harm was shown by "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." 889 F.3d at 969–70. Here, although Plaintiff has alleged that he stopped buying the Pods after learning that they were not recyclable, he was also alleged that he originally purchased the Pods in reliance upon Keurig's representations on product labeling that the Pods were recyclable. Compl. ¶¶ 8-9 [#1].

A plaintiff who has been injured by past advertising and who could be exposed to future marketing has standing to press for an injunction so that they can rely on future statements from the company. Any other rule leaves purchasers on uncertain footing when viewing future advertisements, not knowing whether a company has changed its product to conform to the advertisement or whether the advertisement remains false. The court finds plausible that Plaintiff would purchase Pods again if he had confidence that they were recyclable, and that his alleged present inability to rely on the product's labeling satisfies the requirement of an "actual and imminent, not conjectural or hypothetical" threat of future harm sufficient to establish his "'personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court

jurisdiction." Summers, 555 U.S. at 493. Thus, Downing's request for injunctive relief can continue.

### B. *Unfair and Deceptive Advertising Claims*

#### 1. Chapter 93A Claims

Chapter 93A makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. Mass. Gen. Laws ch. 93A, § 2(a). "It provides for a private cause of action to any 'person' who, *inter alia*, 'has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . .'" In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 184 (1st Cir. 2009) (quoting Mass. Gen. Laws ch. 93A, § 9). In determining whether Downing has sufficiently pled a violation of Chapter 93A, the court applies the substantive law of Massachusetts. See Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 20 (1st Cir. 2017).

"To plausibly state a Chapter 93A claim premised on a deceptive act, the plaintiff must allege '(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury.'" Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 71 (1st Cir. 2020) (quoting Casavant v. Norwegian Cruise Line, Ltd., 919 N.E.2d 165, 169 (Mass. App. Ct. 2009)). For an act to be deceptive, "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." Tomasella, 962 F.3d at 72 (internal citation omitted). Additionally, because a claim of deception involves fraud, "Rule 9(b) requires that plaintiff 'to specifically plead the time, place, and content of [the] alleged false representation[s]' underlying the intentional misrepresentation and Chapter 93A claims." O'Hara

9

v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 462 (D. Mass. 2018) (quoting Mulder, 865 F.3d at 22).

                        a)       Deception

*First*, Mr. Downing has plausibly shown that calling the Pods recyclable was a deceptive act. Chapter 93A is informed by Federal Trade Commission regulations. See Mass. Gen. Laws ch. 93A, § 2(b) (telling interpreting courts to be "guided by the interpretations given by the Federal Trade Commission"). The Federal Trade Commission has published guidance for companies deciding whether they can advertise products as "recyclable." 16 C.F.R. § 260.12(b) states that "When recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims." 16 C.F.R. § 260.12(b)(2); see also 16 C.F.R. § 260.12(b)(1) (defining substantial majority as "at least 60 percent"). Specifically, the regulations state that "If any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable." 16 C.F.R. § 260.12(d). That prohibition is followed by an example, in which

> [a] paperboard package is marketed nationally and labeled either 'Recyclable where facilities exist' or 'Recyclable B Check to see if recycling facilities exist in your area.' Recycling programs for these packages are available to some consumers, but not available to a substantial majority of consumers nationwide. Both claims are deceptive because they do not adequately disclose the limited availability of recycling programs.

Id. Where Downing alleges that most recycling centers do not accept Pods and only 30% of Keurig's Pods were recyclable at the facilities that accepted them, and Keurig's statement to "check locally" may not be sufficient to avoid deceptive marketing under the example to the

10

FTC regulation, Downing has plausibly alleged that misled Keurig consumers.[2]

*Second*, Downing has plausibly asserted that a reasonable consumer viewing the recycling claim on the Pods would have believed that the Pods were recyclable. In O'Hara, customers who purchased Guinness, believing it had been brewed in Ireland because of representations on the label referencing "St. James Gate, Dublin" and stating the beer was "traditionally brewed," were found to have reasonably trusted the label despite the disclosure next to the ingredients list that the beer was, in fact, brewed in Canada: "'[R]easonable consumers [are not] expected to look beyond misleading representations on the front of the [container] to discover the truth from the ingredient list in small print on the side' of it." 306 F. Supp. 3d 441, 462 (D. Mass. 2018). Similarly, reasonable customers viewing the Keurig's claims that the Pods were recyclable were not expected to do research to see if the Pods were actually recyclable, either in their own communities or across the United States. The warning "check locally" did not make those customers unreasonable in assuming the Pods were recyclable. See 16 C.F.R. § 260.12(d).

---

[2] Additionally, Section 2(c) of Chapter 93A states that "The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter." Some of the regulations that have been promulgated by the Massachusetts Attorney General include the prohibition that "No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof," 940 C.M.R. 3.05(1), as well as a more general prohibition that "Sellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell," 940 C.M.R. 6.03(2). Therefore, Massachusetts regulations, as well as federal regulations, provide a legal basis to plausibly state that the advertisements were deceptive.

*Third*, Downing avers that he relied on Keurig's representations that the Pods were recyclable in deciding to purchase the Pods. Compl. ¶ 8-9 [#1]. Although Keurig calls the statement "threadbare," Def's Mem. 17, Downing did not have to say more to plausibly show that the advertisement caused him to purchase the Pods.

*Finally*, Downing's Complaint includes enough detail to satisfy the time, place, and content requirements of Federal Rule of Civil Procedure 9(b). Downing alleges that the false advertisements were on Keurig boxes (the place) and those advertisements contained claims of recyclability (the content). Downing also alleges that were repeated and substantially similar throughout the time period alleged (the time) and that he purchased the Pods after seeing the advertisement. Those details provide enough factual matter for Downing's Complaint to survive a motion to dismiss. See, e.g., Dumont v. Reily Foods Co., 934 F.3d 35, 39 (1st Cir. 2019).

          b)      Injury

An injury for Chapter 93A purposes must be separate from the deceptive conduct. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017) (quoting Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013)) ("To state a viable claim, the plaintiff must allege that [he] has suffered an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself."). By tying the injury to the difference in the market value between recyclable Pods and non-recyclable Pods, Downing has plausibly stated an injury that is separate from Keurig's allegedly false recyclability claim. The economic harm caused by buying a product that is allegedly misrepresented to be a higher quality than it is viably makes the claim that Downing has been injured. "Whether the label was actually false, whether the product was actually inferior, and whether any resulting injury is measurable are issues for another day that cannot be

12

resolved on a motion to dismiss." Crane v. Sexy Hair Concepts, LLC, 2017 U.S. Dist. LEXIS 220112, at *12 (D. Mass. 2017).

### c) Causation

"[P]roving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under" Chapter 93A. Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 791 (2006).  By reporting that Keurig's advertising was the reason for his purchase of the Pods and his resulting loss, Downing has straightforwardly alleged but-for causation. Additionally, advertisements for consumer goods are intended to induce people to buy the product on the advertised basis. When a purchaser sees an advertisement that promises a benefit that the purchaser does not in fact receive, the advertisement has foreseeably created an economic loss. See International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 850 (1983) (citing Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 800-801 (1976)) (defining causation as both "a causal connection between the deception and the loss and [a loss that] was foreseeable as a result of the deception"). Therefore, Downing has plausibly alleged both but-for and proximate cause.

**V.      Motion to Strike the Putative Nationwide Class**

"If it is obvious from the pleadings that [a] proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013). "Nonetheless, courts should exercise caution when striking class action allegations based solely on the pleadings . . . ." Id. In Downing's Complaint, he proposes two different class sizes, one consisting of persons who purchased Pods in Massachusetts and one consisting of all Pod purchasers nationwide. Compl. ¶ 70-71. He supports his claims for a nationwide class by providing questions that would be common to the class and alleging that all

of Keurig's business decisions, including its decision to market its Pods as recyclable and the graphic design of the recyclability logo took place in Massachusetts. Id. at ¶ 58-66. Keurig argues that Chapter 93A was passed to protect Massachusetts consumers rather than to regulate Massachusetts businesses, Def's Mem. 19, and therefore that the court should use its discretion under Rule 12(f) to strike the claims of non-Massachusetts purchasers and the putative nationwide class.

Chapter 93A does not require that a plaintiff reside in Massachusetts to bring a claim. Instead of a residency requirement, Massachusetts courts often consider the Restatement (Second) of Conflict of Laws § 148 (Am. L. Inst. 1971) to determine whether the deceptive conduct occurred primarily and substantially in Massachusetts when deciding whether a plaintiff can proceed under Chapter 93A. See, e.g., Sonoran Scanners, Inc. v. Perkinelmer, Inc., 585 F.3d 535, 546 (1st Cir. 2009). Section 148 of the Restatement puts forward six different factors for determining whether Massachusetts laws apply, including four relevant here:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties. . . .

Restatement (Second) of Conflict of Laws § 148(2) (Am. L. Inst. 1971). The commentary to Section 148 states that, in weighing these factors, the place where the plaintiff received the deceptive representations "constitutes approximately as important a contact as does the place where the defendant made the representations" but not as important a contact as "the place where the plaintiff acted in reliance on the defendant's representations." Id. at § 148 cmt. g.

Massachusetts case law also prioritizes the place where potential plaintiffs acted in reliance on a defendant's deceptive advertising. See Bushkin Assoc., Inc. v. Raytheon Co., 393

14

Mass. 622 (1985) (determining that deceptive phone calls, placed from headquarters in Massachusetts but received and acted upon in New York, to have taken place in New York). Here, as in Bushkin, the injury occurred where consumer purchased Pods in reliance on advertising that the Pods were recyclable, not where the advertising strategy was initiated. Using the "place of reliance" factor, entitled to greater respect than a defendant's principal place of business, and considering the fact that Keurig made its representations on the boxes of its Pods (likely the same place that the purchasers relied on the advertisements and certainly the same place that the plaintiff received the representations), the court strikes Downing's putative nationwide class because plaintiffs who saw Keurig advertisements and acted in reliance on them outside of Massachusetts are not covered by Chapter 93A.

## VI.  Conclusion

For the foregoing reasons, Keurig's Motion to Dismiss [#16] is DENIED. To the extent that Downing alleges injury on behalf of a nationwide class, those claims are struck under Federal Rule of Civil Procedure 12(f).

IT IS SO ORDERED.

June 11, 2021                                                    /s/ Indira Talwani
                                                                 United States District Judge